UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLANCA C. VILLOCH, individually,
and on behalf of all other employees
who are similarly situated,

        Plaintiff,

        v.                                  Case No. 8:15-cv-00587-T-23MAP

ULTIMATE FITNESS GROUP, LLC,
(d/b/a Orange Theory Fitness),
TAMPA FITNESS PARTNERS, LLC,
(d/b/a Orange Theory Fitness), and
TAMPA FITNESS PARTNERS IV,
LLC (d/b/a Orange Theory Fitness),

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, formally employed as a fitness coach, claims Defendants failed to pay her and other employees similarly situated for all hours worked in violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b) (Count 1) and Florida's unpaid wages law (Count 2).[1] Currently, Plaintiff moves to certify her lawsuit as a hybrid class action by seeking conditional certification as a collective action under the FLSA for Count 1 as well as class certification under Fed. R. Civ. P. 23 for Count 2 (docs. 17, 28, 43). Defendants have responded in opposition claiming Plaintiff has failed to demonstrate any of her claims require class treatment (docs. 25, 32, 40, 41). Because I agree that Plaintiff has not provided

---

[1] The district judge referred this matter to me for a report and recommendation (docs. 19, 29). *See* 28 U.S.C § 636 and Local Rule 6.01(b).

sufficient evidence to meet the requirements for class certification as to any of her claims, I recommend the district judge deny both motions.

*A. Background*

All parties agree that Defendants operate a company called Orange Theory Fitness ("Orange Theory"). Orange Theory comprises multiple franchised fitness studios in at least 35 different states and five foreign countries (doc. 40-1, Pineda Dec. at ¶ 5). Defendant Ultimate Fitness Group ("UFG") franchises the Orange Theory studio locations as well as the Orange Theory brand (*Id.*). Defendants Tampa Fitness Partners, LLC ("TFP") and Tampa Fitness Partners IV, LLC ("TFP IV"), on the other hand, are apparently Orange Theory franchisees (*Id.*).

The relationship between UFG, TFP, and TFP IV is disputed. Plaintiff claims that because of UFG's policies, it qualifies as Plaintiff's joint employer (doc. 28 at pp. 4-5). UFG denies any relationship with TFP or TFP IV, other than it being their franchisor. Indeed, it maintains that it has no control over the employment matters of its individual franchisees or their day-to-day business (doc. 40-1, Pineda Dec. at ¶ 6). Plaintiff also contends that TFP IV is owned and operated by TFP (doc. 13 at p. 3). TFP claims, however, it is only an area manager for certain franchisees, including TFP IV, but it does not directly employ any fitness coaches or operate any individual Orange Theory franchise (doc. 41-1, Allen Dec. at ¶¶ 2-3). At most, the relationship between these entities is unclear.

What appears undisputed is that all Orange Theory studios employ fitness coaches to promote the Orange Theory brand and implement the Orange Theory workout method,

which comprises a 60-minute workout session involving intervals of cardiovascular and strength training (doc. 17 at p. 2). Plaintiff is a former Orange Theory fitness coach who worked at two different studio locations owned by TFP IV. The juxt of Plaintiff's complaint is that Defendants do not compensate fitness coaches for all hours worked. She contends that despite time spent on numerous other tasks, Defendants only compensated fitness coaches for work during the standard 60-minute workout session (*Id.* at p. 7). Outside those workout sessions, Defendants also required fitness coaches to participate in activities such as: reviewing exercise templates, preparing hour-long playlists of music for classes, attending employee meetings, preparing and conducting special seasonal programming, attending webinars and training, introducing new members before classes, selling memberships after classes, cleaning after certain classes, and reviewing and responding to emails and telephone calls from fellow trainers and supervisors (doc. 17-3, Villoch Dec. at ¶ 6). But, Defendants allegedly do not compensate fitness coaches for these activities (*Id.*). Indeed, Plaintiff asserts that she is aware of several fitness coaches who were required to participate in these activities without compensation, and she expects many would like to join her lawsuit (*Id.* at p. 4). At this time, however, Plaintiff has not identified any other fitness coach desiring to support her claims.

Defendants argue that fact, among others, is fatal to Plaintiff's request for class certification. Defendants also generally contend that both of Plaintiff's motions fail because UFG and TFP are not Plaintiff's employer, Plaintiff's alleged class is not similarly situated, and Plaintiff has otherwise failed to satisfy all the requirements for a conditional collective

3

and Rule 23 certification.

> *B. Discussion*

Plaintiff moves to certify this action as a hybrid class under two bases: conditional collective action certification under the FLSA and class certification under Fed. R. Civ. P. 23. "Hybrid class action suits under Rule 23 (for state law [] wages) and 29 U.S.C. § 216(b) (for [FLSA violations]) may proceed without conflict." *Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1276-77 (S.D. Fla. 2012) (citing Advisory Committee's Notes to Federal Rule 23(b)(3)).

> *1. conditionally collective action certification*

Under the FLSA, "any one or more employees for and in behalf of himself or themselves and other employees similarly situated" may file an action to recover unpaid minimum wage or overtime compensation. 29 U.S.C. § 216(b). "No party, [however], shall be a party plaintiff to any such action unless he give his consent in writing to become such a party." *Id.* When deciding whether to certify collective actions under the FLSA, the Eleventh Circuit suggests district courts use a two-tiered approach. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). At the first step, or so-called "notice stage," the court examines the pleadings and affidavits proffered and decides if potential class members should be notified. *Id.* at 1218 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir.1995). Given the minimal evidence before it, the court uses a fairly lenient standard, and typically the court will "conditionally certify" the class. *Id.* If so, the putative class members are noticed and offered the opportunity to "opt- in." *Id.* When discovery is

4

completed, the defendant often precipitates a second review of the class certification decision via a motion to decertify the class. *Id*. With more information available, the court either finds the opt-in plaintiffs are similarly situated or grants the motion, decertifies the class, dismisses the opt-in plaintiffs without prejudice, and proceeds to trial on the original claims by the named plaintiff or plaintiffs. *Id.* Here, however, Plaintiff has not provide enough evidence to proceed past the first stage.

At the first stage, the court must determine whether there are any other employees that desire to opt-in to the lawsuit and whether those employees are similarly situated. *Dybach v. State of Florida Dept. Of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). The plaintiff has the "burden to demonstrate a reasonable basis for crediting their assertion that aggrieved individuals exist[] in the broad class they proposed." *Haynes v. Singer Co. Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). Plaintiff can demonstrate this by affidavits, consents to join, or "expert evidence on the existence of other similarly-situated employees." *Rodgers v. CVS Pharmacy, Inc.*, No. 8:05-cv-770-T-27MSS, 2006 WL 752831, at * 3 (M.D. Fla. Mar. 23, 2006) (citation omitted). The court will not accept unsupported allegations that additional plaintiffs will come forward. *Id.* In fact, it is well settled in the Eleventh Circuit and in this district that a court will not certify the action and provide notice until plaintiff sufficiently demonstrates there are other plaintiffs who desire to opt-in. *See Dybach*, 942 F.2d at 1567-68; *Mackenzie v. Kindred Hosp. East, L.L.C.*, 276 F. Supp.2d. 1211, 1220-21 (M.D. Fla. 2003); *Rodgers*, 2006 WL 752831, at * 3; *David v. Assoc. Out-Door Clubs, Inc.*,

No.8:09-cv-1541-T-30MAP, 2010 WL 1730702, at * 1 (M.D. Fla. Apr. 27, 2010).[2]

To support her argument that there are other employees who desire to opt-in, Plaintiff states that she has

> personal knowledge of other fitness coaches who were subject to the same pay policies with Defendants, … but [s]ince the lawsuit has begun, [she] ha[s] refrained from communicating with any former colleagues, but [she] expect[s] that many will like to participate, especially given that over 1,000 personal trainers sought to participate in a similar, if not identical, collective action against L.A. Fitness.[3]

(doc. 17-3, Villoch Dec. at ¶¶ 10-11). Nevertheless, Plaintiff does not identify any specific fitness coach or coaches that have expressed an interest in joining her lawsuit. Furthermore, in the almost four months since filing this lawsuit no one has made any effort to join her action. Her statement that she *expects* other fitness coaches will opt-in is therefore speculative, vague, and conclusory. *See Rodgers*, 2006 WL 752831, at * 3 (emphasis

---

[2] Plaintiff has cited to several different cases in courts outside the Eleventh Circuit and this district as persuasive authority that the Court should follow their rationale and liberally construe the statute to allow Plaintiff to rely on her allegations that other similarly situated potential plaintiffs exists. However, this district has consistently rejected Plaintiff's position. Instead, the courts in this district recognize the holding of *Dybach*, 942 F.2d at 1567-68, which requires the Plaintiff demonstrate that someone other than herself wishes to join her lawsuit before the court will authorize notice.

[3] The case Plaintiff refers to is *Moore v. Fitness Int'l., LLC*, No. 3:12-cv-1551-LAB-NLS, 2013 WL 3189080 (Jun. 21, 2013). The *Moore* case was similar in legal theory (i.e. a class of fitness trainers filed a class action complaining of a session rate compensation system that did not account for outside tasks associated with those sessions). *See id.* at *2-3. But that case was factually different and was also in a different procedural posture. For example, in that case there were plaintiffs who had expressed and had already joined in suits against L.A. Fitness prior to class action certification and there were multiple suits filed in state court asserting similar allegations. *Id.* Furthermore, because the parties had already conducted discovery, the Plaintiff had evidence as to the time-keeping and compensation structure of the different stores. *Id.*

added). Plaintiff has not met her burden to demonstrate that other aggrieved individuals exist in the class she proposes. *Haynes*, 696 F.2d at 887. Accordingly, conditional certification is unwarranted.

### 2. *Rule 23 certification*

Plaintiff next seeks class certification under Rule 23 for her state unpaid wage claim. But, like her motion for conditional certification, class certification under Rule 23 is inappropriate. Questions concerning class certification are left to the sound discretion of the district court. The burden rests with Plaintiff to prove all of the requirements of Rule 23 are met, and a court may certify a class action only after conducting a "rigorous analysis" to ensure that all of the requirements of Rule 23 are satisfied. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 456 (11th Cir. 1996); *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir. 1984). "However a court, in determining whether to certify a class, will accept plaintiffs' substantive allegations as true." *Edmonds v. Levine*, 233 F.R.D. 638, 640 (S.D. Fla. 2006) (citing *In re Carbon Dioxide Antitrust Litigation*, 149 F.R.D. 299, 232 (M.D. Fla. 1993). A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). The court's determination will not be overturned absent a showing that it has abused its discretion. *In re Dennis Greenman Securities Litigation*, 829 F.2d 1539, 1543-44 (11th Cir. 1987).

Under Rule 23(a) class certification is appropriate if "(1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and

common law to the class; (3) the claims or defenses of the representatives are typical of the unnamed members; and (4) the named representatives will be able to represent the interest of the class adequately and fairly." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003).  In addition to satisfying each element of 23(a), the plaintiffs must also prove that the proposed class properly falls into one of the three subsections of Federal Rule of Civil Procedure 23(b).  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

Plaintiff proposes the Court certify the following class: "All 'fitness coach' employees in Florida who worked for Defendants within the last two (2) years who were not paid their agreed upon hourly wage for all hours worked." (doc. 28 at p. 3).

*i. numerosity*

To satisfy the numerosity requirement, Plaintiff must demonstrate that joinder of all class member is impracticable given their number and all other relevant factors. *Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-cv-1306-J-34JRK, 2014 WL 2625181, at *12 (M.D. Fla. Jun. 12, 2014) (citation omitted).  A "precise number of class members," is not required; however, a party must make a "reasonable estimate[] with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 484, 490 (S.D. Fla. 2003)(quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). The Eleventh Circuit has found that less than 21 potential class members is inadequate, more than 40 forty adequate, and numbers falling in between are open to judgment based on other factors. *See Cox*, 784 F.2d at 1553.  Some factors the courts can consider when determining

8

whether the Plaintiff has met the numerosity requirement include: (1) geographic diversity of the class members, (2) the nature of the action, (3) the size of plaintiff's claim, (4) judicial economy, (5) the inconvenience of trying individual lawsuits, and (5) the ability of the individual class members to institute individual lawsuits. *See Agan v. Katzman & Koor, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004).

Plaintiff alleges she has met the numerosity element by pointing to Orange Theory's website, which confirms that more than 200 fitness coaches are employed by UFG in Florida in any given year; and using that number, she estimates that the class size could be as large as 400 individuals (doc. 28 at p. 8).[4] Although UFG does not specifically contest numerosity in its opposition, it claims it does not employ any fitness coaches. Plaintiff contends that TFP employs approximately 20 fitness coaches, TFP IV employs approximately 7 coaches, and there could be additional fitness coaches formerly employed by Defendants during the class period (doc. 28 at p. 5). Plaintiff does not provide any evidence to confirm those numbers but merely offers her belief. To the contrary, TFP claims it does not employ any fitness coaches. The Court is therefore unclear as to how many employees could potentially make up the class. Further, Plaintiff makes no argument as to geographic diversity of the class members (all are presumably in Florida), the nature of the action, the size of a plaintiff's claim, judicial economy, the inconvenience of trying individual lawsuits, or the

---

[4] This number was calculated by multiplying Orange Theory's 60 locations in Florida and using an average of 5 fitness coaches at each studio location, which is actually 300 fitness coaches, but Plaintiff explains there may be some overlap in coaches between studios (doc. 28 at p. 8).

9

ability of the individual class members to institute individual lawsuits. Without any analysis as to these factors or evidence that would support a reasonable estimate of the size of the proposed class and total number of class members, the Court finds Plaintiff has not sufficiently satisfied the numerosity requirement of Rule 23. *See Cox*, 784 F.2d at 1553.

### *ii. Commonality and typicality*

"The commonality requirement demands only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This part of the rule "does not require that all the questions of law and fact raised by the dispute be common," *Cox*, 784 F.2d at 1557, or that the common questions of law or fact "predominate" over individual issues. *Id.* To that end, the Supreme Court has held that "[c]ommanlity requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, ____ U.S. ___, 131 S.Ct. 2541, 2551 (2011). Additionally, to satisfy the commonality requirement, "a class action must involve issues that are susceptible to class wide proof." *Cooper v. Southern. Co.,* 390 F.3d 695, 714 (11th Cir. 2004), *overruled on other grounds*, (quoting *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001)). This "means that determination of its truth or falsity will resolve an issue that is central to the validity of each on of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. However, it is not necessary that all members of the class have identical claims. *See Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 n. 14 (11th Cir. 2000). Instead, both commonality and typicality, focuses "on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members." *Id.* at 1278. But while commonality

10

focuses on group characteristics, typicality "refers to the individual characteristics of the named plaintiff in relation to the class." *Id.* at 1279.  A plaintiff can satisfy the typicality requirement if the claims of the named plaintiff and those of the class "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

Here, Plaintiff claims the commons issues arise from Defendants' uniform policy of requiring fitness coaches to work unpaid, off-the-clock hours without compensation.  And all fitness coaches possess the same interest in recovering these off-the-clock hours.  In support, she has provided evidence that purports to prove Defendants have a uniform policy of not paying their employees for time worked outside of the standard 60-minute workout session. This evidence consists of a employment advertisements for various Orange Theory franchisees, which list job prerequisites for the employment of fitness coaches; the Orange Theory Trainer Certification Workbook, which provides the requirements for fitness coach certification; and an Orange Theory Agreement, which outlines a fitness coach's job responsibilities.  She has also provided her declaration.  These documents are informative as to the common elements of a fitness coach's job, but none of this evidence provides any insight into whether UFG or any of Orange Theory's 60 different franchised fitness studios in Florida implement a common policy to not compensate their fitness coaches for activities performed outside the 60-minute training session.

Plaintiff readily admits and it is undisputed that franchisees "directly hire, manage, and pay the[ir] fitness coaches." *See* docs. 28, p. 4; 40-1, Pineda Dec. at ¶ 6.  Thus, one can

11

assume that each studio is likely to also have their own policies regarding the same; different managers and supervisors may implement those policies uniquely and may also have different time-keeping systems to track their employees time. Plaintiff has not set forth any affidavits demonstrating any conduct by other Orange Theory fitness studios that is similar to what she alleges here. *See generally Wal-Mart*, 131 S. Ct. at 2557 (holding plaintiffs could not meet the commonality requirement without convincing proof of a discriminatory pay policy). In the end, the Court would be forced to make plaintiff-specific inquiries such as whether each plaintiff's particular studio compensated him or her for off-the-clock hours, what type of activities were not compensated, whether a particular plaintiff's supervisor was aware of the off-the-clock activity, and how each plaintiff's studio recorded that plaintiff's time to determine whether there was class-wide off-the-clock violations. This factual inquiry by the Court could likely lead to markedly different positions and "a hodgepodge of factually as well as legally different plaintiffs." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d. Cir. 1996). Plaintiff has not demonstrated that Defendants' pay policies injured all potential class members in the same way or if they injured them at all. Accordingly, class certification is not warranted due to lack of commonality and typicality.

### *iii. adequacy*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." There are two separate inquiries under this section: (1) whether there are any substantial conflicts of interest between the named representatives of the class and the class members; and (2) whether the representatives will adequately

prosecute the action. *See Busby,* 513 F.3d at 1323 (citing *Valley Drug Co.,* 350 F.3d at 1189). This requirement serves to uncover any conflict of interest that named parties may have with the class they represent. *See Amchem Prod., Inc., v. Windsor,* 521 U.S. 591, 627 (1997). "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate." *Id.* Minor conflicts alone will not defeat class certification, the conflict must be "fundamental" to the specific issues in the case. *Id.* Under this section, the Court must also consider the competency and any conflicts that the class counsel may have. *See id.* at 627 n.20.

Plaintiff asserts there are no conflicts of interest between Plaintiff and the absent class members as all damages result from the exact same legal theory. And as to proposed class-counsel, Plaintiff contends that her attorneys "have previously engaged in major complex litigation, which is similar in size, scope, and complexity to the present case[,] [and] [t]he experience of Plaintiff's counsel in effectively litigating complex federal court actions will insure the fair and adequate representation of the class in the case at bar." (doc. 28, p. 12). Defendants do not address the issue in their opposition. The Court, however, is not entirely satisfied that Plaintiff has met the adequacy requirement. As explained above, the pay policies of the 60 different franchised studios could vary widely. As such, the Plaintiff's ability to adequately represent the class is questionable. The Court, however, does not doubt Plaintiff's counsels' ability to fairly and adequately represent the class.

*iv. Rule 23(b)*

Because the Court does not find that Plaintiff has satisfied all the requirements of

Rule 23(a),there is no need to analyze the requirements of Rule 23(b).  The Court has found that Plaintiff has not presented enough evidence that common issues would predominate over individualized issues or that a resolution of the common issues in a class action is superior to individual lawsuits.  Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1.  Plaintiff's motion to conditionally certify FLSA collective action (doc. 17) be DENIED; and

2. Plaintiff's motion for class certification (doc. 28) be DENIED.

IT IS SO REPORTED in chambers at Tampa, Florida on July 16, 2015.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).